UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN KLOTH-ZANARD, ) <br> *Plaintiff*, ) <br>  ) <br> v. ) <br>  ) <br> BLOCK, INC., as the parent company of ) <br> WEEBLY.COM, ) <br> *Defendant*. ) | 3:24-CV-965 (SVN) <br><br><br><br><br> September 26, 2025 |

## RULING ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

*Pro se* Plaintiff Joan Kloth-Zanard, a consultant for several organizations, alleges that Defendant Block, Inc., as the parent company of Weebly.com, violated her rights when it blocked her out of her clients' websites on Defendant's system, in apparent retaliation for one of her clients disputing a bill it received from Defendant. Plaintiff asserts five claims: (1) tortious interference; (2) violation of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983; (3) violation of the Uniform Commercial Code; (4) breach of contract and failure to mitigate; and (5) unjust enrichment.

Defendant seeks to dismiss Plaintiff's action, contending that the Court lacks subject matter jurisdiction over certain of Plaintiff's claims because she lacks standing to bring them, and that, in any event, all of Plaintiff's claims fail to state a claim upon which relief can be granted. *See* Mot. to Dismiss, ECF No. 52-1; Def.'s Reply, ECF No. 74. Plaintiff opposes the motion. *See* Pl.'s Opp'n, ECF No. 73.

For the reasons described below, the Court finds that Plaintiff fails to state any cognizable claims for relief and, in some instances, lacks standing to do so. Thus, Defendant's motion to dismiss is GRANTED as to all claims. Plaintiff is permitted leave to file an amended complaint

only with respect to her tortious interference with contract and unjust enrichment claims; all other claims are dismissed without leave to amend.[1]

## I.  FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's second amended complaint as true for purposes of deciding Defendant's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff worked as a consultant to seven organizations: PAS Intervention ("PASI"); Advocate for Families; KZ Snowshed; Snowshed CC, Enough Court Corruption; Turning Points for Families; and Snowshed Designs. *See* Second Am. Compl., ECF No. 43 at 2; at 10 ¶ 24; at 11 ¶ 25. PASI is a 501(c)(3) nonprofit organization, of which Plaintiff is the founder. *Id.* at 2; at 9 ¶ 11.[2] Although Plaintiff's allegations are somewhat unclear, the Court believes that in her role as a consultant, Plaintiff provided resources and information for her clients' websites, and helped build and maintain those websites. *See* ECF No. 43 at 1 (noting that Plaintiff maintained and built her clients' websites); at 3 ¶ 4 (noting that two of Plaintiff's "projects had over 100 pages each"),

---

[1] Plaintiff filed a motion for leave to file a sur-reply to Defendant's reply to her opposition to this motion to dismiss, which also included a renewed request for appointment of counsel. *See* Mot., ECF No. 77. Sur-reply briefs may be allowed upon a showing of good cause. D. Conn. L. Civ. R. 7(d). As Plaintiff has not made a showing of good cause and the content of the proposed sur-reply does not alter the outcome of this ruling, Plaintiff's motion is denied. Additionally, the Court notes that Defendant failed to comply with Local Rule 12(a)'s requirement to provide Plaintiff with the Notice to Self-Represented Litigant Regarding a Motion to Dismiss. The Notice required by the Local Rules is intended to put *pro se* litigants on notice of the fact that a motion to dismiss may be granted if the *pro se* litigant does not respond to the motion, and of the option to seek an extension of time to file a response. *See* D. Conn. L. Civ. R. 12(a). District courts have discretion to excuse non-compliance with their Local Rules, in the interests of justice. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000). Here, Plaintiff sought (and received) a lengthy extension of time in which to respond to the motion, *see* Order, ECF No. 59, and filed not only a primary opposition, but also a motion to file a sur-reply brief, *see* ECF No. 73, ECF No. 77. It is thus clear she was aware of her obligation to respond to the motion and her option to seek additional time to do so. Given that the motion to dismiss has been pending for a significant period of time and Plaintiff was undisputably aware of her obligation to respond, the Court finds that it is in the interests of justice to excuse Defendant's non-compliance with Local Rule 12(a) and to proceed with deciding the motion on the papers the parties have submitted to date.

[2] The second amended complaint repeats paragraph numbering. To avoid confusion, where the Court refers to a paragraph number, it also refers to the associated page number.

¶ 6 (noting that "Plaintiff spent at least 90% of her day building and creating and maintaining the websites").

Plaintiff had an online account with Weebly.com, the parent company of which is Defendant Block, Inc. *Id.* at 1. The Weebly web-based product provides customers with tools to build a professional website. Annos Decl., Def.'s Ex. A, ECF No. 52-2 ¶ 5.[3] Through Weebly, Plaintiff built and maintained her clients' websites. ECF No. 43 at 1.

In December of 2022, PASI disputed alleged overcharges on its American Express credit card in relation to a bill from Defendant that failed to account for PASI's nonprofit status discount. *Id.* at 7 ¶ 1. Following that dispute, Defendant shut down Plaintiff's account, which resulted in shutting down PASI's website and the websites for six other organizations for which Plaintiff consulted, despite that the other organizations were up-to-date on their bills or had free sites. *Id.* at 8 ¶¶ 4, 10; at 9 ¶ 15; at 10 ¶ 21. Plaintiff contacted Defendant on behalf of PASI, seeking to understand and remedy the billing issue. *See id.* at 9 ¶¶ 11–13. As part of her interactions with Defendant, she allegedly "repeatedly request[ed] ADA Reasonable accommodations and to speak to Weebly's ADA coordinator," but such requests were denied. *Id.* at 4 ¶ 16; at 14 ¶ 50.

Although it is somewhat unclear how long the websites were shut down, the Court understands that as a result of the shutdown, Plaintiff lost the content she developed for her clients and posted on their websites, along with organizational data and sales and merchandise data, and the websites were hacked because they lost antivirus protection that was provided by Defendant. *See id.* at 6 ¶ 16; at 11 ¶¶ 26, 28–31. Plaintiff alleges that she has spent significant time working to rebuild the websites in the wake of these problems, including hiring a "new nonprofit platform" at a cost of $6,000, learning how to use that platform, and spending thousands of hours re-

---

[3] For purposes of assessing a motion to dismiss for lack of subject matter jurisdiction, the Court may examine materials beyond the complaint. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

developing the resources that were lost. *See id.* at 3–4 ¶¶ 10–15; at 13 ¶ 41–42; at 14 ¶¶ 46–48. Plaintiff also alleges that she lost her income, as her clients "had to shut down their businesses" because their websites were shut down, and that her unspecified disabilities were exacerbated by Defendant's ADA violations. *Id.* at 4 ¶ 15; at 13 ¶ 39; at 14 ¶ 49. Plaintiff seeks $6,000,000 in damages to remedy these harms.[4] *Id.* at 17 ¶¶ 1–6.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Id.*

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant

---

[4] Although Plaintiff states that she seeks $5,000,000 in damages, she goes on to request $1,000,000 in damages each for six different categories of damages, amounting to a total of $6,000,000 in damages. *See* ECF No. 43 at 17.

4

has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

For the reasons discussed below, the Court dismisses the second amended complaint in full.

A. <u>Count One: Tortious Interference</u>

First, because Plaintiff has failed to state a claim for tortious interference, Count One must be dismissed.

To state a claim for tortious interference with contractual relations under Connecticut law, a plaintiff must plead "(1) the existence of a contractual or beneficial relationship, (2) the defendant['s] knowledge of that relationship, (3) the defendant['s] intent to interfere with the relationship, (4) [that] the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant['s] tortious conduct." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 212–13 (2000).[5]  An interference is tortious if it involves "fraud, misrepresentation, [or] intimidation," or if the defendant acted "maliciously." *Solon v. Slater*, 345 Conn. 794, 813 (2023).  Construing the facts in the light most favorable to Plaintiff—and considering her complaint with the special solicitude that must be afforded a *pro se* litigant—Plaintiff has not plausibly pleaded this claim.

While it may be possible to conclude that Plaintiff had a beneficial relationship with her clients as their consultant, *see* ECF No. 43 at 2; at 10 ¶ 24; at 11 ¶ 25; and it appears that Plaintiff has pleaded that Defendant was aware of her relationship with at least PASI, as she called on behalf of PASI to understand the nature of the billing problem, *see id.* at 9 ¶¶ 11–13, Plaintiff has alleged no facts to show that Defendant intended to interfere with her relationship(s) with her clients or that any such interference involved fraud, misrepresentation, intimidation, or other malicious conduct on the part of Defendant.  Thus, Plaintiff's claim for tortious interference is dismissed, as

---

[5] Defendant contends that California law applies to this claim.  The Court need not decide the choice of law question, as the elements for a tortious interference claim under both Connecticut and California are essentially the same.  *See* ECF No. 52-1 at 27 (identifying elements under California law).  Thus, the outcome is the same regardless of which state's law is applied.

6

she has failed to allege facts to support all elements necessary to state such a claim. Plaintiff will be afforded leave to amend this claim.

  B. <u>Count Two: Violation of Title III of ADA and Related Claims</u>

  In Count Two, Plaintiff lumps together alleged violations of Title III of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and a Connecticut statute the Court has been unable to identify.[6] Because Plaintiff fails to state a claim under any of these statutes, Count Two is dismissed.

  First, Plaintiff's ADA Title III claim fails. Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff has requested only monetary damages for her ADA claim. *See* ECF No. 43 at 17. But monetary damages are not available under Title III of the ADA. *See* 42 U.S.C. § 2000a-3(a); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (noting that "Title III of the ADA . . . allows only for injunctive relief"); *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."); ECF No. 52-1 at 22. For this reason alone, Plaintiff's ADA claim fails.

  Plaintiff's ADA claim also fails on the merits. To state a claim under Title III of the ADA, a plaintiff must allege: "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide."

---

[6] Plaintiff brings Count Two under "CT GS 28.35." *See* ECF No. 43 at 4 ¶ 16, at 14 ¶ 50. Presuming that "CT GS" refers to the Connecticut General Statutes, the Court has searched those statutes, but cannot find one that matches or otherwise contains those numbers that pertains to the types of claim Plaintiff attempts to raise. Thus, the Court finds that any reference to this statute fails to state a claim, as no such law can be identified.

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). First, Plaintiff asserts only the conclusory statement that she has "ADA disabilities." *See* ECF No. 43 at 14 ¶ 49. Absent additional information about her disabilities to support the determination that she is disabled within the meaning of the ADA, Plaintiff cannot state a claim under the ADA. Second, while it is possible Defendant operates a place of public accommodation through Weebly.com, given that it is a public-facing website, *see Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 367–69 (S.D.N.Y. 2022), Plaintiff fails to explain how Defendant discriminated against her beyond stating that they failed to provide "reasonable accommodations" or to permit Plaintiff to speak to their ADA coordinator. *See id.* at 4 ¶ 16; at 14 ¶ 50. Such assertions are wholly conclusory and cannot be relied upon to defeat a motion to dismiss. *See Rolon*, 517 F.3d at 149. Thus, Plaintiff's ADA claim fails.

Plaintiff's claim under Section 504 of the Rehabilitation Act suffers the same fate. Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance*." 29 U.S.C. § 794 (emphasis added). Critical to any Section 504 claim is an allegation that the violating entity receives Federal financial assistance. *Id.* Plaintiff fails to assert facts to support the conclusion that Defendant, a private business, receives any federal financial assistance. Thus, Plaintiff's Section 504 claim fails.

Finally, Plaintiff's Section 1983 claim must also be dismissed. Section 1983 "provides a federal cause of action against any person who, *acting under color of state law*, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (emphasis added) (citing 42 U.S.C. § 1983). Accordingly, a plaintiff must show that the conduct complained of (1) was

committed by a person acting "under color of state law" and (2) deprived her of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994). Plaintiff has alleged neither a violation of a federally protected constitutional or statutory right nor that any such violation was the result of state action. Therefore, Plaintiff's Section 1983 claim fails.

For these reasons, Count Two is dismissed. As the deficiencies with each of the claims alleged in Count Two are substantive, they are dismissed without leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### C. Count Three: Violation of the UCC

Next, Plaintiff fails to state a claim for violation of the Uniform Commercial Code because neither California's nor Connecticut's UCC applies to the sale of services, as opposed to goods. *See Wall Street Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1186 (Cal. Ct. App. 2008); *Western Dermatology Consultants, P.C. v. VitalWorks*, 146 Conn. App. 169, 176 (2013). As Defendant provides website creation *services* to its users, the UCC is inapplicable. *See* Def.'s Ex. C, ECF No. 52-4 at 3, § 1 (noting that the Terms of Service govern use and access to Weebly's "website creation service"). Thus, Count Three is dismissed without leave to amend.

### D. Count Four: Breach of Contract

Plaintiff's breach of contract claim must be dismissed because she lacks standing to assert it and, even if she were able to establish standing, her claim is time-barred.

"Article III of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *W.R. Huff Asset Mgmt. Co., LLC v Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). In turn, "Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and

9

the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief." *Id.* at 106–07 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  If a plaintiff lacks Article III standing, the federal court lacks subject matter jurisdiction over the plaintiff's claims.  *See Ariztegui v. Sikorsky Aircraft Corp.*, No. 3:10-CV-672 (JBA), 2011 WL 1216089, at *5 (D. Conn. Mar. 28, 2011) (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.,* 528 U.S. 167, 180 (2000); *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.,* 448 F.3d 138, 145 (2d Cir. 2006)).  The Court may examine materials outside of the pleadings in assessing whether it has subject matter jurisdiction.  *Makarova*, 201 F.3d at 113.

To establish standing to sue in a breach of contract claim, "a plaintiff must be a party to the contract at issue."  *Ariztegui*, 2011 WL 1216089, at *5 (collecting cases).  It is not sufficient for a plaintiff to allege that they work for a party to the contract at issue, absent a showing of an assignment of a claim.  *See W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 107 (finding that an injury to a party's clients is insufficient to satisfy standing requirements).

Here, although Plaintiff does not identify a particular contract she claims was breached, Plaintiff has failed to allege that she is a party to *any* contract with Defendant.  Defendant's Terms of Service make clear that, if a person is using Weebly's services for an organization, the user is "agreeing to these Terms on behalf of that organization."  Def.'s Ex. C., ECF No. 52-4 at 3.  Plaintiff repeatedly notes that the websites are her clients' sites and that she is a consultant for those clients.  *See, e.g.*, ECF No. 43 at 2 (referring to "plaintiff's clients['] websites); at 4 ¶ 15 (referring to "the companies' websites"); at 7 ¶ 1 (noting that PASI disputed charges related to its website); at 10 ¶ 24 (noting Plaintiff "performs consulting services" for PASI); at 11 ¶ 25 (noting that Plaintiff is the "main consultant to the nonprofit"); at 13 ¶ 39 (referencing her "clients'

10

accounts" with Weebly). Thus, as Plaintiff was using Weebly's services on behalf of organizations, the governing contract was a contract between the organization(s) and Weebly, not between Plaintiff and Weebly. And, as the Court previously warned Plaintiff, she cannot bring claims on behalf of any organizations in a *pro se* capacity. *See* Order, ECF No. 42. As Plaintiff has alleged no facts to suggest that she, rather than her clients, are the parties to the contracts with Defendant, she lacks standing to assert claims for breaches of those contracts under common law.

Even if Plaintiff did have standing to raise a breach of contract claim, any such claim would be time-barred under Weebly's Terms of Service. Plaintiff alleges that Defendant's actions causing the shutdown of her account and corresponding loss of work and income took place, at the latest, on or about December 27, 2022. ECF No. 43 at 7 ¶ 1. The Terms of Service governing Plaintiff's use of Weebly provide the following: "REGARDLESS OF ANY STATUTE OR LAW TO THE CONTRARY, ANY CLAIM OR CAUSE OF ACTION BROUGHT BY YOU ARISING OUT OF OR RELATED TO USE OF THE SERVICE OR THESE TERMS MUST BE FILED WITHIN ONE (1) YEAR AFTER SUCH CLAIM OR CAUSE OF ACTION AROSE OR BE FOREVER BARRED." Def.'s Ex. C, ECF No. 52-4 at 38, § 25.[7] The Terms of Service are governed by California law. *See id.* at 39, § 27. Under California law, a contractual limitations period like the one in the Terms of Service is enforceable. *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 887 (N.D. Cal. 2023). As Plaintiff commenced this action no earlier than March of 2024, after the one-year contractual imitations period expired, her breach of contract claim is time-barred. Therefore, even if Plaintiff could allege she was a party to any relevant contract with Defendant, her breach of contract claim would still be time-barred.

---

[7] The Court may properly consider the Terms of Service in assessing whether Plaintiff fails to state a claim, as they are integral to Plaintiff's breach of contract claim. *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).

11

Finally, although Plaintiff attempts to allege a claim for "failure to mitigate," failure to mitigate damages is an affirmative defense pleaded by a defendant, not by a plaintiff. *Preston v. Keith*, 217 Conn. 12, 21–22 (1991); *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp, U.S.A.*, 221 Cal. App. 4th 867, 884 (Ct. App. 2013).

For these reasons, Count Four is dismissed, without leave to amend.

E.  Count Five:  Unjust Enrichment

Lastly, Plaintiff lacks standing to assert an unjust enrichment claim.  The elements of a cause of action for unjust enrichment are (1) the defendant was benefitted; (2) the defendant unjustly did not pay the plaintiff for the benefits; and (3) the failure of payment was to the plaintiff's detriment.  *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006).[8]  Plaintiff alleges Defendant was unjustly enriched because it "refused to refund the plaintiff for all of the contracted payments that were shut down but had nothing to do with the nonprofit billing dispute." ECF No. 43 at 7 ¶ 29.  But the complaint is ambiguous as to whether Plaintiff herself paid Defendant to maintain her clients' websites—such that any refund would be owed to her—or whether the clients did.  *See, e.g.*, *id.* at 1 ("When the defendant blocked the plaintiff's access to her account, it severed her ability to maintain and build the rest of her clients' websites *that were paid in full or w[]ere free*."); at 8 ¶ 10 ("In retaliation, the defendant shutdown all the websites built by the Plaintiff, Joan Kloth-Zanard, despite all of the other states being in good standing *and paid in full until February 2024 or free sites*."); at 13 ¶ 39 ("The plaintiff lost all access to *these paid in full clients' accounts*…") (emphases added).  In at least one place, the complaint suggests that her clients, rather than she, paid to maintain the websites.  *Id.* at 7 ¶ 1 (noting that PASI "disputed over-charges on *their* American Express credit card").  By phrasing her allegations

---

[8] Again, the elements of this claim under California law are substantially the same.  *See* ECF No. 52-1 at 28.

ambiguously as to the source of the payments to Defendant, Plaintiff renders the Court unable to conclude that *she* can personally assert an unjust enrichment claim based on Defendant's alleged withholding of the refunds.

Finally, Defendant is correct that an unjust enrichment claim cannot be based on an enforceable contract, as Plaintiff alleges. *Id.* at 7 ¶ 29 (alleging that Defendant "has refused to refund the plaintiff for all of the *contracted payments*") (emphasis added); *see Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 332 (Cal. Ct. App. 2012), *as modified on denial of reh'g* (Feb. 24, 2012); *United Coastal Indus., Inc. v. Clearheart Constr. Co., Inc.*, 71 Conn. App. 506, 512 (2002).

For these reasons, Count Five is dismissed. As the deficiencies the Court has identified with this claim are pleading-related, Plaintiff will be afforded leave to amend this claim.

## IV. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED. Plaintiff may file an amended complaint by **October 17, 2025**. As noted in this ruling, Plaintiff is permitted to amend her complaint only with respect to her tortious interference with contract and unjust enrichment claims; all other claims are dismissed without leave to amend.

**SO ORDERED** at Hartford, Connecticut, this 26th day of September, 2025.

                                      */s/ Sarala V. Nagala*
                                      SARALA V. NAGALA
                                      UNITED STATES DISTRICT JUDGE